UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC SWENSON,

        Plaintiff,

v.                                      Case No. 3:19-cv-821-BJD-PDB

DALLAS E. PALECEK et al.,

        Defendants.

_____

## ORDER

### I. Background & Allegations

Plaintiff, an inmate of the Florida penal system, is proceeding pro se on an amended complaint (Doc. 34; Am. Compl.) in which he asserts claims under 42 U.S.C. § 1983 (excessive force and failure to intervene) and state law (negligence and battery) against officers with the Nassau County Sheriff's Office (NCSO) and the Fernandina Beach Police Department (FBPD). The claims arise out of an incident that occurred at a home on July 22, 2015. See Am. Compl. at 3, 4. Defendants reported to the residence because Plaintiff had shot his brother.[1] Id. at 4. When officers arrived, Plaintiff was in the garage,

---

[1] Plaintiff was sentenced to a ten-year term after pleading guilty to attempted second degree murder. See Nassau County Clerk of the Circuit Court and Comptroller, available at https://www.nassauclerk.com/ (last visited July 8, 2021).

and he then "fled into the residence proper." Id. Plaintiff contends Defendants "were in cons[t]ant radio communication with each other" but not physically together: some officers "establish[ed] a perimeter" around the house; Defendant Palecek and his "spotter" were positioned about eighty-five yards from the front door; and Defendant Smith was on the phone with Plaintiff to negotiate his surrender. Id. at 4, 5. Plaintiff claims a rifle was "on the living room floor," but the only thing in his hand was a phone. Id. at 5. When he approached the front door, Defendant Palecek, an officer with the NCSO, shot him. Id.

Plaintiff alleges Defendant Dallas Palecek's shooting was unreasonable under the circumstances because he was unarmed and had agreed to surrender. Id. at 4, 5. Plaintiff asserts Defendants Smith and Mazuryk, both officers with the FBPD, and two John Doe Defendants, failed to intervene. Id. at 7.

## II. Motions

Before the Court are two motions to dismiss or alternatively for summary judgment (Docs. 37, 38), which Plaintiff opposes (Docs. 42, 43).[2] Defendants Smith and Mazuryk submit a joint motion (Doc. 37; Smith Motion),

---

[2] In both responses, Plaintiff references exhibits. It is unclear what the exhibits are. Plaintiff does not describe them, and the only documents attached to his responses are copies of the relevant motion to dismiss.

arguing they are entitled to qualified immunity on the failure-to-intervene claim because Plaintiff does not allege facts showing they were in a position to intervene, and Defendant Palecek reasonably used deadly force because Plaintiff was armed and threatened to shoot officers. <u>See</u> Smith Motion at 11-12, 14-15. As to the state-law negligence and battery claims, Defendants Smith and Mazuryk invoke sovereign immunity. <u>Id.</u> at 16. They also assert the official-capacity claims against them fail because Plaintiff alleges no facts showing a causal connection between a constitutional violation and actions or omissions by the City of Fernandina Beach, and Plaintiff failed to notify the City of his intent to file state-law claims before he initiated the action. <u>Id.</u> at 19-20. Finally, these Defendants contend Plaintiff is not entitled to punitive damages, and his claims against the John Doe Defendants must be dismissed because the statute of limitations has run. <u>Id.</u> at 21-22.

In support of their (alternative) motion for summary judgment, Defendants Smith and Mazuryk incorporate by reference the exhibits attached to former Defendant Chief James Hurley's motion to dismiss or summary judgment (Doc. 13):[3] Plaintiff's criminal docket sheet for case number 2015CF677 (Doc. 13-1; Ex. A); the charging document (Doc. 13-2; Ex. B);

---

[3] Plaintiff voluntarily dismissed his claims against Chief Hurley. <u>See</u> Order (Doc. 22).

Plaintiff's executed plea of guilty and negotiated sentence agreement and sentencing documents (Doc. 13-3; Ex. C); Defendant Smith's declaration (Doc. 13-4; Ex. D); Defendant Mazuryk's declaration (Doc. 13-5; Ex. E); and Chief Hurley's declaration (Doc. 13-6; Ex. F).

In response to Defendants Smith and Mazuryk's motion (Doc. 42; Pl. Smith Resp.), Plaintiff emphasizes he alleges Defendants were communicating by "phone or short[-]wave radio" with one another during the stand-off. See Pl. Smith Resp. at 2. According to Plaintiff, Defendant Smith was in a position to intervene in the shooting because Defendant Smith was on the phone with Plaintiff and should have communicated to all officers that he had surrendered. Id. at 2, 3. Plaintiff does not explain what facts show Defendant Mazuryk could have intervened. Id.

In a separate motion to dismiss (Doc. 38; Palecek Motion), Defendant Palecek argues Plaintiff's amended complaint constitutes a "shotgun pleading" and should be dismissed on that basis alone. See Palecek Motion at 1. Additionally, Defendant Palecek contends Plaintiff fails to state a plausible constitutional claim against him in his individual and official capacities, he is immune from suit on the state-law claims, the state-law claims are barred by Florida Statutes section 766.085, and the John Doe Defendants should be dismissed for Plaintiff's failure to timely identify them. Id. at 2.

4

In response to Defendant Palecek's motion (Doc. 43; Pl. Palecek Resp.), Plaintiff says he has been unable to obtain evidence to rebut Defendants' assertion that Defendant Palecek's use of deadly force was reasonable. See Pl. Palecek Resp. at 2. For instance, Plaintiff contends Defendants have "refused to release the contents" of the recorded phone conversation between himself and Defendant Smith, and "the recorded radio and dispatch and body cam recorders have been suppressed." Id.

The Court liberally construes Plaintiff's opposition to Defendants' motions as invoking Rule 56(d), which authorizes a court to defer or deny a motion for summary judgment when the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." See Fed. R. Civ. P. 56(d)(1). The purpose of Rule 56(d) "is to provide an additional safeguard against an improvident or premature grant of summary judgment." Est. of Todashev by Shibly v. United States, 815 F. App'x 446, 453 (11th Cir. 2020) (quoting 10B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2740 (4th ed.)).

While Plaintiff does not offer an affidavit or declaration in the technical sense, he is proceeding pro se, and he explains in detail the evidence he needs but cannot obtain without discovery. In fact, "Plaintiff has offered what may well be the most recognized reason why a party should be given the shelter of

Rule 56(d) from a pre-discovery motion for summary judgment: '[T]he key evidence lies in the control of the moving party.'" Id. (quoting with emphasis McCray v. Md. Dep't of Transp., 741 F.3d 480, 484 (4th Cir. 2014)). Notably, the Court has not yet authorized the parties to exchange discovery. In fact, in pro se civil rights cases, discovery typically is delayed until after the Court rules on motions to dismiss and all Defendants file an answer.

Accordingly, the Court finds it premature to rule on motions for summary judgment, especially given the parties dispute material facts—whether Defendants believed Plaintiff was armed with a gun, whether Plaintiff informed Defendant Smith he would surrender, and, if he had, whether the other officers knew Plaintiff agreed to surrender—and Plaintiff has no access to documents or other evidence that will resolve these disputed factual issues without discovery. See Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049, 910 F.3d 1130, 1155-56 (11th Cir. 2018) ("Generally, a district court should allow discovery before ruling on a motion for summary judgment."); Fla. Power & Light Co. v. Allis Chalmers Corp., 893 F.2d 1313, 1316 (11th Cir. 1990) ("Before entering summary judgment the district court must ensure that the parties have an adequate opportunity for

discovery."). Thus, the Court will deny the motions for summary judgment without prejudice subject to renewal after discovery closes.[4]

### III. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." <u>See</u> Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).

---

[4] Additionally, though Defendant Palecek titles his motion as one in the alternative for summary judgment under Rule 56, he argues solely that Plaintiff fails to allege sufficient facts to survive dismissal under Rules 8(a) and 12(b)(6), and the only documentary evidence he offers are public court filings of which he asks the Court to take judicial notice "without converting the motion to dismiss into a motion for summary judgment." <u>See</u> Palecek Motion at 3 n.1.

## IV. Analysis

In both motions, Defendants ask the Court to dismiss the claims against the John Doe Defendants for Plaintiff's failure to identify them within the statute of limitations. <u>See</u> Smith Motion at 21-22; Palecek Motion at 14-15. Defendants do not address whether they have standing to assert such a defense on behalf of other as-yet unnamed and unserved Defendants. Regardless, for reasons addressed later in this Order, the Court finds Plaintiff's claims against the John Doe Defendants are due to be dismissed for his failure to state a plausible claim against them.

Defendants also commonly assert Plaintiff alleges no facts supporting a constitutional claim against them in their official capacities. <u>See</u> Smith Motion at 19-20; Palecek Motion at 9-10. Aside from saying in his responses that he is suing Defendants in their individual and official capacities, Plaintiff does not rebut this argument. <u>See</u> Pl. Smith Resp. at 2; Pl. Palecek Resp. at 3. To the extent Plaintiff seeks to hold the City liable solely because officers allegedly violated his constitutional rights, such a theory of liability is not viable under § 1983. <u>See</u> <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").

A municipality may be liable only on a showing that the governmental entity itself causes a constitutional violation, such as when the entity "had a policy, custom, or practice that caused [a] deprivation." <u>Cooper v. Rutherford</u>, 828 F. App'x 619, 621 (11th Cir. 2020) (quoting <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016)). A review of the amended complaint shows Plaintiff does not allege facts suggesting or permitting the reasonable inference a City policy, custom, or practice resulted in a deprivation of Plaintiff's constitutional rights. On the contrary, Plaintiff alleges Defendant Palecek acted in direct violation of "agency rules related to response to resistance and use of deadly force." <u>See</u> Am. Compl. at 5. Thus, Defendants' motions are due to be granted to the extent Plaintiff fails to state a plausible constitutional claim against them in their official capacities.[5]

As to the remaining arguments Defendants assert in their separate motions, the Court will address Defendant Palecek's motion first because whether Plaintiff states a plausible failure-to-intervene claim against Defendants Smith and Mazuryk necessarily depends on whether he

---

[5] Defendants also argue Plaintiff's state-law claims against them in their official capacities must be dismissed for Plaintiff's failure to satisfy the pre-suit notice requirement. <u>See</u> Palecek Motion at 10-11; Smith Motion at 20-21. Plaintiff does not assert state-law claims against Defendants in their official capacities, however. Plaintiff specifies that he asserts the pendent state claims against Defendants "in their personal capacities." <u>See</u> Am. Compl. at 7.

sufficiently alleges an excessive-force claim against Defendant Palecek. <u>See</u> <u>Sebastian v. Ortiz</u>, 918 F.3d 1301, 1312 (11th Cir. 2019) ("Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed.").

## A. Defendant Palecek's Motion

First, Defendant Palecek argues Plaintiff fails to allege facts showing a constitutional violation. <u>See</u> Palecek Motion at 8-9. Plaintiff alleges Defendant Palecek had no reason to shoot him because he was unarmed and ready to surrender, <u>see</u> Am. Compl. at 5-6, which implicates the Fourth Amendment. The Supreme Court has recognized, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1985). As such, despite that an officer has probable cause to arrest an individual, the officer's use of force to effectuate an arrest must be objectively reasonable under the circumstances. <u>Id.</u> at 7-8, 9. For instance, when a suspect poses no threat to officers or bystanders, the use of deadly force to prevent the suspect's escape is unreasonable. "A police officer may not seize an unarmed, non[-]dangerous suspect by shooting him dead." <u>Id.</u> at 11. On the other hand, when an officer reasonably believes a suspect poses a threat of harm to others, the use of deadly force to seize the suspect is "not

constitutionally unreasonable." Id. See also Hunter v. Leeds, City of, 941 F.3d 1265, 1279 (11th Cir. 2019) ("It is axiomatic that when an officer is threatened with deadly force, he may respond with deadly force to protect himself.").

Whether an officer's use of force during an arrest is objectively reasonable requires consideration of factors such as the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). "Graham dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002).

Accepting as true the allegations in Plaintiff's sworn complaint, the Graham factors weigh in his favor. While Plaintiff committed a serious crime (attempted murder), he alleges he had surrendered and was unarmed when Defendant Palecek shot him without warning. See Am. Compl. at 4-5. Additionally, Plaintiff explains multiple officers surrounded the house. See Hunter, 941 F.3d at1280 (holding there was no serious risk of escape such as to warrant the use of deadly force because the plaintiff "was no longer actively fleeing and was surrounded by at least four police officers").

Even though Plaintiff concedes he had a rifle inside the house when he was shot, "[t]he mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force." See Gregory v. Miami-Dade Cty., Fla., 719 F. App'x 859, 869 (11th Cir. 2017) (quoting Perez v. Suszczynski, 809 F.3d 1213, 1220 (11th Cir. 2016)). Accordingly, Plaintiff has done enough to state a plausible Fourth Amendment claim against Defendant Palecek. And, to Defendant Palecek's argument that Plaintiff's complaint is a shotgun pleading, see Palecek's Motion at 1, 6, Plaintiff's allegations are simple and concise such that Defendant has notice of the claims against him and the grounds upon which those claims rest.

Next, as to the state-law claims, Defendant Palecek invokes sovereign immunity under Florida Statutes section 768.28(9)(a). Florida's sovereign immunity statute grants immunity to state employees for tort actions unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See Fla. Stat. § 768.28(9)(a). Courts are reluctant to strip officers of their immunity under section 768.28(9)(a). As such, a threadbare recital that a defendant "acted maliciously and in bad faith is conclusory" and, therefore, insufficient. Brivik v. Law, 545 F. App'x 804, 807 (11th Cir. 2013).

Florida courts have equated the phrase "bad faith" as used in section 768.28(9)(a) with the actual malice standard and interpreted "malicious purpose" as conduct committed with "the subjective intent to do wrong." Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (citing cases). Conduct is considered "wanton" if performed "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons," while "willful" conduct is conduct performed "intentionally, knowingly and purposely." Id. at 110; Williams v. City of Minneola, 619 So. 2d 983, 987 (Fla. 5th DCA 1993) (holding a finding of recklessness also could support a finding of "willful and wanton conduct under section 768.28(9)"). See also Valdes v. Crosby, 390 F. Supp. 2d 1084, 1108 (M.D. Fla. 2005), aff'd, 450 F.3d 1231 (11th Cir. 2006) (noting the standard to overcome Florida's sovereign immunity "is at least as high as the standard needed to prove" an officer or agent of the state was deliberately indifferent to an inmate's health or safety under § 1983).

Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, he goes beyond making merely conclusory assertions. Plaintiff alleges Defendant Palecek intentionally shot him even though he was unarmed and agreed to surrender. See Am. Compl. at 5. At this stage of the proceedings, Plaintiff alleges enough to overcome a sovereign immunity

defense. <u>See</u> <u>Gregory</u>, 719 F. App'x at 870 (holding the district court erred in finding the officer-defendant was entitled to sovereign immunity because there was a genuine dispute as to whether the suspect made a threatening gesture just before the officer shot him).

Finally, Defendant Palecek contends the state-law claims are barred by Florida Statutes section 776.085, <u>see</u> Palecek Motion at 13, which provides as follows: "It shall be a defense to any action for damages for personal injury … that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony." Fla. Stat. § 776.085(1). Plaintiff was convicted of attempted murder, which qualifies as a "forcible felony" under this statute. <u>See</u> Fla. Stat. § 776.08 (defining the phrase "forcible felony" to include murder and manslaughter). However, Defendant Palecek fails to show this defense bars the state-law claims against him because Plaintiff was shot well after he committed the crime for which he was convicted. In other words, he was not shot "<u>during</u> the commission or attempted commission" of the crime. <u>See</u> Fla. Stat. § 768.085(1) (emphasis added).

The cases Defendant Palecek relies upon demonstrate the statutory bar operates when the injury and the felony or attempted felony occur simultaneously or during the same sequence of events. <u>See, e.g.</u>, <u>Hetherly v.</u>

Sawgrass Tavern Inc., 975 So. 2d 1266, 1268 (Fla. 4th DCA 2008) (holding the plaintiffs' claims were barred because they were injured while they were attacking a co-worker inside the co-worker's home after breaking in); Gonzalez v. Liberty Mut. Ins. Co., 634 So. 2d 178, 179 (Fla. 3d DCA 1994) (affirming summary judgment for the defendants because the homeowner shot and killed a burglar while he was actively trying to break into the house). Plaintiff's injury did not occur while he was committing the felony of attempted murder. In fact, Plaintiff shot his brother before Defendants had even arrived. Thus, the statutory provision does not apply.

For the above reasons, Defendant Palecek's motion is due to be granted in part and denied in part.

### B. Defendants Smith and Mazuryk's Motion

Defendants Smith and Mazuryk argue Plaintiff fails to allege they violated a clearly established constitutional right and, as such, they are protected under the doctrine of qualified immunity. See Smith Motion at 9, 13. An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to

exercise their official duties without fear of facing personal liability. <u>Alcocer v. Mills</u>, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. <u>Id.</u>

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. <u>Dukes v. Deaton</u>, 852 F.3d 1035, 1041-42 (11th Cir. 2017). Defendants carry their burden to show they were acting as officers of the FBPD at the relevant times, a point Plaintiff does not contest. Thus, the burden shifts to Plaintiff to point to allegations demonstrating the violation of a clearly established constitutional right. <u>Alcocer</u>, 906 F.3d at 951.

Under some circumstances, an officer who is present during a use of force but does not himself use force may be held liable under § 1983 as if he had. <u>See Salvato v. Miley</u>, 790 F.3d 1286, 1295 (11th Cir. 2015) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[ ] can be held liable for h[er] nonfeasance." (quoting with alterations <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1442 (11th Cir. 1985)). However, under a failure-to-intervene theory, the bystander officer must have had an opportunity to intervene, which depends on the circumstances, including whether the officer was present,

witnessed the use of force, and had time to stop or prevent it. See Marantes v. Miami-Dade Cnty., 649 F. App'x 665, 672 (11th Cir. 2016) (holding the plaintiff did not allege facts that would show the bystander officers had time to prevent the acting officer from kicking the plaintiff "four times in rapid succession without warning," even though they were nearby). See also Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998) (holding an officer who was arresting an armed attacker was not in a position to protect a second armed attacker from another officer's alleged use of force). Cf. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 (11th Cir. 2000) (holding the bystander officer could have intervened if the evidence established the police dog's attack lasted as long as two minutes).

"Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Alcocer, 906 F.3d at 951 (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).

As Plaintiff describes events, once Defendant Palecek spotted Plaintiff standing behind the door, Defendant Palecek announced "contact" and then shot him. See Am. Compl. at 5-6. Notably, Plaintiff says Defendant Palecek

fired only once, hitting him in the elbow; Defendant Palecek did not discharge a series of shots. Assuming Defendants Smith or Mazuryk heard Defendant Palecek say "contact," understood that to mean Palecek was about to shoot, and had reason to question Defendant Palecek's decision, there are no facts permitting the inference they had the ability or time to issue a command or physically prevent Defendant Palecek from doing so.[6] For instance, Plaintiff does not allege how much time elapsed between when Defendant Palecek spotted him at the door and when Defendant Palecek shot him, nor does he allege Defendants Smith or Mazuryk could see Plaintiff or knew Defendant Palecek's vantage point or position relative to Plaintiff's.

In fact, Plaintiff explains the officers had "establish[ed] a perimeter" around the house, see Am. Compl. at 4, meaning the officers were not physically positioned close enough to one another to enable their communication in real time. Additionally, in response to Defendant Palecek's motion, Plaintiff says Defendant Palecek "took an independ[e]nt action" and "was totally rouge [sic]," suggesting he acted on his own volition. See Pl. Palecek Resp. at 2, 3. In short, Plaintiff does not allege facts that would permit the reasonable inference Defendants Smith or Mazuryk were in a position or

---

[6] This is especially true as to Defendant Mazuryk because Plaintiff does not allege anyone other than Defendant Smith knew he had agreed to surrender. See Am. Compl. at 5.

18

had time to prevent Defendant Palecek from firing a single shot at Plaintiff. See Hunter, 941 F.3d at 1282 (holding officers were not in a position to intervene when another officer shot the plaintiff because, even though the officers were at the scene, they did not observe the shooting and could not see the plaintiff). See also O'Kelley v. Craig, 781 F. App'x 888, 896 (11th Cir. 2019), cert. denied, 140 S. Ct. 2641 (2020) (noting as dicta the plaintiff failed to allege state troopers could have intervened to prevent a county deputy from shooting their son because there was no indication the troopers were aware of the deputy's "plan to use force to end the encounter").

Plaintiff implies Defendant Smith failed to communicate Plaintiff's surrender to the other officers in time to prevent the shooting. Even if true, any such omission at most suggests negligence. Additionally, Plaintiff explains Defendant Smith was on the phone with him trying to negotiate his surrender. Much like the two officers in Ensley, who were simultaneously attempting to arrest two armed attackers, Defendants Palecek and Smith each were actively handling different aspects of a developing, potentially dangerous situation. See 142 F.3d at 1407-08. As alleged, Defendant Smith, who was on the phone negotiating the surrender of a suspect she knew just shot a family member, did not have the opportunity or the time to prevent Defendant Palecek's single shot. After all, "this is not a case in which an officer is alleged to have stood

idly by while a fellow officer mistreated a member of the public." Id. at 1407.

Cf. Carr v. Tatangelo, 338 F.3d 1259, 1270 n.21 (11th Cir. 2003), as amended (Sept. 29, 2003) (noting an officer who was hiding in the bushes when other officers shot a suspect could not have prevented the shooting even though all officers were "in radio contact" with one another).

Because Plaintiff fails to allege facts showing or permitting the reasonable inference Defendants Smith or Mazuryk violated Plaintiff's constitutional rights, they are entitled to qualified immunity on the failure-to-intervene claim. Similarly, Plaintiff alleges no facts suggesting Defendants Smith or Mazuryk acted in bad faith or with malice. As such, they are protected by sovereign immunity on Plaintiff's state-law claims, and their motion is due to be granted.

### C. John Doe Defendants: <u>Sua</u> <u>Sponte</u> Frivolity Review

Plaintiff names two John Doe Defendants in his amended complaint, saying their identifications are "pending discovery."[7] See Am. Compl. at 4. The

---

[7] Even though Plaintiff says he needs to engage in discovery to learn these officers' identities, he does not say why he could not have identified these individuals sooner and, in fact, it appears he could have. In his response to one of the motions to dismiss, Plaintiff references having read the police report, and a review of the state court docket shows his criminal defense attorney subpoenaed numerous officers with the NCSO and FBPD—in addition to Defendants Smith, Mazuryk, and Palecek—to testify at his criminal trial. See Nassau County Clerk of the Circuit Court and Comptroller, available at https://www.nassauclerk.com/ (last visited July 8, 2021).

only factual allegations he lodges against the John Doe Defendants are similar to those he asserts against Defendants Smith and Mazuryk but less developed—one John Doe helped establish a perimeter around the house, while the other was a "spotter" for Defendant Palecek. Id. at 4, 5. Plaintiff alleges the John Doe Defendants, like Defendants Smith and Mazuryk, "were in [a] position to intervene and …. knew the plaintiff was unarmed." Id. at 7.

Plaintiff alleges no facts supporting his conclusory assertion that the John Doe Defendants were in a position to intervene but failed to do so. Conclusory assertions are insufficient to sustain a cause of action under the federal pleading standard. See Tani v. Shelby Cnty., Ala., 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations"). As such, the Court exercises its authority under the Prison Litigation Reform Act (PLRA) to dismiss Plaintiff's claims against the John Doe Defendants. See 28 U.S.C. § 1915(e)(2)(B) (authorizing a district court to dismiss a complaint filed by a prisoner proceeding as a pauper if the complaint "fails to state a claim upon which relief may be granted"); 28 U.S.C. § 1915A(b)(1) (providing a district

court shall dismiss any portion of a complaint that fails to state a plausible claim for relief).[8]

Accordingly, it is now

**ORDERED**:

1.  Defendants' alternative motions for summary judgment (Docs. 37, 38) are **denied without prejudice**.

2.  Defendants Smith and Mazuryk's motion to dismiss (Doc. 37) is **granted in part** to the extent the claims against them are **dismissed with prejudice**.

3.  Defendant Palecek's motion to dismiss (Doc. 38) is **granted in part** and **denied in part**.

4.  Defendant Palecek must answer Plaintiff's amended complaint (doc. 34) within **twenty days** of the date of this Order.

5.  Plaintiff's claims against the John Doe Defendants are **dismissed without prejudice** under the PLRA.

6.  The **Clerk** shall **terminate** Defendants Smith, Mazuryk, and John Does as parties to this action.

---

[8] Plaintiff is proceeding as a pauper under 28 U.S.C. § 1915(b)(1)(A). <u>See</u> Order (Doc. 5).

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of July

2021.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Eric Swenson
Counsel of Record